oral argument, 15 minutes per side. Mr. Brown for the appellant. Please the court, your honor, as I would like to reserve three minutes of my time for rebuttal, please. Please the court, your honor, my name is Mark Brown. I'm here today representing Ted Doukas on this appeal from the United States Bankruptcy Court for the Southern District of Ohio. Mr. Doukas appeals a decision that was made by the bankruptcy judge which held that Mr. Doukas does not have a claim against Mr. Bavelis under Florida securities law. In other words, those are, as the judge determined, exempt securities under Florida security law and thus not subject to the registration requirements. The case, however, of which this appeal jettisons out of, for lack of a better term at this point, has nothing to do with Mr. Doukas personally. Mr. Doukas and one of Mr. Doukas' entities, Quick Capital of Long Island filed a proof of claim in the Bavelis underlying Chapter 11 bankruptcy case and that case was the only, that was part, excuse me, I'll back up, and that particular claim was filed and as a result of that claim being filed, Bavelis filed an adversary complaint against Quick Capital and there were some personal claims against Mr. Doukas, but that was a 15 count adversary complaint and only one count out of those entire 15 counts was count three, was the Quick Capital count, was actually tried over four days in April of 2012. But when the bankruptcy court made its final ruling in this case, they not only denied Quick Capital's proof of claim, but they also determined that Mr. Doukas did not have a claim under Florida securities laws. That was Mr. Doukas individually did not have a claim under Florida securities laws that he could bring against Mr. Bavelis. Now, if in fact the bankruptcy court stops at the Quick Capital decision, we're not here today. But the bankruptcy court went too far and entered an order against Mr. Doukas personally in which it does not have any jurisdictional right to do so. It was a final order and importantly here, your honors, is Mr. Doukas never filed a proof of claim individually. The only claim filed was filed by Quick Capital. This appeal today goes to the heart of what is a core issue in bankruptcy and what is a non-core issue in bankruptcy. I'm sure the court's aware if it's a core proceeding in bankruptcy, the bankruptcy judge is perfectly authorized to enter a final judgment on that claim. If it's a non-core proceeding, however, the bankruptcy judge is limited to simply bringing in to bear findings of fact and conclusions of law which are then subject to a de novo review by the district court. This case continues to be governed by this court's previous holding in Waldman v. Stone, which held that while a certain claim, and I think we call these claims Stern claims nowadays after the Stern versus Marshall case in the United States Supreme Court, in one of these types of Stern claims, yes, statutorily the bankruptcy court may have the right to consider something, but there's a constitutional limit to how far a non-Article III court and a non-Article III judge can go. And in the Waldman case, this court said there's really kind of a dual Article III, Section 1 of the Constitution has sort of a dual character to it. It has a personal right, which is always waivable, and it has a structural right, which is not waivable. And in this case, what we're talking about is a structural right, which is not waivable. This is a non-core proceeding, basically a creature of state law. Does Mr. Dukas have a claim against Mr. Bovellis, and did Mr. Bovellis violate Florida securities laws? It's a state law claim which the bankruptcy judge ruled upon. In June, the United States Supreme Court, in another case called the Executive Benefits Insurance Agency v. Arkinson, addressed the issue of how courts should proceed when they are faced with one of these so-called stern claims. And their previous holding in stern had not really... Who brought up the idea of the Florida securities law and the right of rescission and all of that in the first place? That brings me to the invited error doctrine, which I was going to get to, Your Honor. And conceitedly, trial counsel did bring up those issues in the trial court. And the reason he brought those issues up is we have to look at it in context. Part of Bovellis' theory, not only at trial, but as you can see from the briefs in this case, is to make Mr. Dukas look like a bad guy. You know, the old white hat, black hat distinction that all of us with gray hairs remember, the old westerns. They're trying to make Mr. Dukas with the black hat. Well, what trial counsel was trying to do in that case by introducing the issues of Florida security law was not use it as a sword, not use it as an affirmative claim, but use it as a defense. In other words, you're saying, my client, Mr. Dukas, is the bad guy over here wearing the black hat. Now let me show you why Mr. Bovellis has a black hat too. And some of the things that he did with respect to the private placement memorandum and other things that deal with the Florida security law. So yes, in fact, trial counsel did bring that issue up. But that was in the context of the initial claim being that this money was loaned and then alternatively saying, well, if you don't really believe that QC or anyone else loaned this money, then the money was used to purchase stock. And that's how the whole issue came before the court. How would the court be able to decide the claim at all if it couldn't look at what the money was really for? The issue of the quick capital money, what it was for, was it for the purchase of stock. And again, I think it's okay for the court to look at that in the context of the quick capital claim. I don't think that's an issue at all, Your Honors. What I think is the issue is, or what I know is the issue is, even if you look at it in that context, that particular issue, Florida securities laws, was never tried in the bankruptcy court. It was not part of the trial. And yet the judge, when it made a decision, even though that proof was presented on a claim that was not before the court, because Mr. Dukas had never filed a claim about that, and it was not part of the adversary proceeding that was tried. So I think it's okay to look at it in context, but I don't think it was okay for the bankruptcy court to make a decision in that context. And that brings us to the issue of really what's going on here is that the Bevelis in this case is really attempting to recast the issue on appeal. And what he's saying is that Mr. Dukas submitted a de facto claim to the court by bringing this information with the Florida security laws before the court. Your Honors, I submit to you there are specific categories, specific ways of doing things in the bankruptcy code, the Federal Rules of Bankruptcy Procedure, the 3000 rules, 3001 to 3007, which have a specific criteria and a specific way you bring a proof of claim. And you either have a claim or you don't have a claim. There is no de facto claim. It's a legal fiction, if you will. And that's what they're trying to do. They're trying to recast this issue and saying, well, Mr. Dukas Suppose the bankruptcy court had said the claim is for money loaned, the money wasn't loaned and stopped. Then what? If the bankruptcy court says the money wasn't loaned and then just stops there, if I'm understanding Your Honors' question, is that correct? If they say it wasn't for money loaned, then I think what you're looking at, we're still looking at a similar situation. I think we're okay in that point. If the bankruptcy judge says, well, it was for money loaned or it wasn't for money loaned, I think he's still just making a decision on the quick capital claim. And that's the context that everything is supposed to fit in. But in fact, what he was doing is he was saying, well, it wasn't money loaned, it was for the purchase of stock, these are exempt securities under Florida law, and Mr. Dukas thus has no claim. I don't think he was, if he just says what Your Honor says, I think we're okay. But I think he went too far beyond the jurisdictional limits of what a bankruptcy judge can do under Article 3. But the adversary complaint, as I'm remembering this, was for the purpose of getting a judgment, at least from Mr. Bovellos' point of view, for the purpose of getting a judgment that neither quick capital nor Mr. Dukas had a claim against the estate. It was just the quick capital claim, though, Your Honor. It wasn't, there are other counts in the adversary proceeding, yes, you're correct on that. It was a 15 count adversary proceeding, but upon the motion of Mr. Bovellos, one of those counts was bifurcated, count 3, and it was taken out, carved out, and that was the case that was tried, right there. So there was no case except the quick capital trial case that was tried before the bankruptcy court. None of the rest of those claims, and they're all still out there. And so yes, theoretically, Mr. Dukas could probably bring a counterclaim in the bankruptcy court. That's a decision he would have to make, because if I understand it correctly, this complaint was amended recently just a couple of months ago. So everything's still in play except for count 3. Count 3 was all that was tried before the court, and that's why we say the bankruptcy court didn't limit its issues to just that count 3. It went entirely too far, which under the Waldman case and under the Arkeson case, goes entirely too far. And that's the issue and the error that's before this court, and that's why we're asking this court to remand the thing back to bankruptcy court. And there's a procedure in place, and I assume if you remand it back, the bankruptcy court can now be instructed to find findings of fact and conclusions of law. I assume that's what can happen. The person bringing the lawsuits, the parties, much like consenting to a magistrate judge, can consent to the bankruptcy judge hearing a non-core issue, but that consent has to be specific, and that's never done in this case, and I can affirm to this court and tell you, Mr. Dukas won't consent to the bankruptcy court making a decision on a non-core issue. This is not a core issue. It's a non-core issue. It's a byproduct of state securities laws only, and the bankruptcy court went too far, so we're asking you to reverse the decision of the bankruptcy court. I see my time is just about up, and I thank Your Honor for your time today. Thank you. May it please the court, Chris Hogan for Mr. Bevelis. I'd like to start just briefly by touching on counsel's black hat comment. I know he's portrayed us as attempting to paint Mr. Dukas in an unfavorable light. I'd suggest that the 115-page decision from the bankruptcy judge sufficiently outlines the fraud committed by Mr. Dukas that Mr. Bevelis doesn't need to paint Mr. Dukas with a black hat. But turning to what Mr. Brown said, I think there are a couple of fundamental premises that don't work in this case that Mr. Brown has set forth. The first is the assertion that the bankruptcy court went too far in determining that Mr. Dukas does not have a bankruptcy court went exactly as far as Mr. Dukas asked it to go. In the proposed findings and conclusions of law submitted after the April 2012 hearing, Mr. Bevelis, who identifies himself as a party to the proposed findings and conclusions, specifically asked the bankruptcy court to find that he has a securities law claim of $1.4 million against Mr. Bevelis. That's what the bankruptcy court ruled on when it said he does not have such a claim. Now there was some discussion about Mr. Dukas never filed a proof of claim. Well, I disagree with that as well. The proposed findings and conclusions that specifically asked for the bankruptcy court to address whether Mr. Dukas has a securities claim is a proof of claim and we can take out the de facto. Mr. Brown cited the 3000 series. Rule 3003 of the bankruptcy rules gives bankruptcy judges the discretion to extend the claims bar date. So here the bankruptcy court had the ability to and in fact did consider this belated proof of claim filed by Mr. Dukas. And in that circumstance, the claims adjudication process, as this court recognized in Waldman, is at the heart not only of core bankruptcy jurisdiction but it is at the heart of the court's constitutional authority. But does bankruptcy rule 3003, by giving the bankruptcy court the ability to consider a late filed claim, does that rule also give the court the ability to say that something that comes in through a proposed finding of fact and conclusion of law is a late filed claim? I would say that the court has the discretion to essentially extend the deadline. No, no, I'm not talking about the deadline. I'm talking about what is this animal. It isn't explicitly a proof of claim. Correct. So where in the bankruptcy rules would I look to find the discretion or the authority of the bankruptcy court to cast it as a late claim, a proof of claim? Certainly, Your Honor. I'm not aware of a specific rule that states that. I'm simply citing the discretion that the court has under rule 3003. I would say, however, that certainly the bankruptcy court never engaged in that type of analysis. But to say that, well, Mr. Dukas didn't file a formal proof of claim on a, you know, the form that you can get from the clerk's website, would elevate form over substance in terms of what happened here. I mean, a creditor has its own discretion as to whether or not it wants to file a proof of claim. There isn't any claim that Quick Capital had utilized, they had expended this money to purchase stock, though, right? No, actually, the argument was that Mr. Dukas, and that's an important question, Your Honor, how this came up was as part of the claim disallowance proceeding, Mr. Dukas, who was the sole witness for Quick Capital and is the sole owner of Quick Capital, testified that he purchased the stock only as a loan for Mr. Babelis, not for his own benefit. And as the evidence started going poorly on that, the story changed to the point where Mr. Dukas says, oh, well, okay, then I have a claim against Mr. Babelis for violation of the security statutes, because the evidence is coming in that, well, I actually bought the stock for myself. So to say, yes, technically, at the beginning, Mr. Dukas was not a party to that particular count, but he inserted himself into the process and then expressly invited the court to rule on that claim. And so I believe that not treating this as a proof of claim or a de facto proof of claim would elevate form over substance, because Mr. Dukas didn't have to ask the court to adjudicate it, but he did. And for him to come back after the fact and complain, well, the court shouldn't have done exactly what I asked it to do, that's a quintessential application of the invited error whether it was belated under Rule 3003 doesn't go to the court's constitutional authority. It's not a stern issue. It's just whether or not Mr. Dukas invited that particular error, assuming that Suppose it had been initially filed as a proof of claim by, I mean, I grant you it would have been contrary to another claim being filed, but suppose it had been filed as a proof of claim that Mr. Dukas had, in fact, purchased this stock for Mr. Bovellos, not for his own benefit. Would the court, the bankruptcy court, have been able to dispose of that claim or would it, would there be a jurisdictional bar? If he had filed it as a proof of claim, there would certainly be no jurisdictional bar. That would be at the, where the constitutional authority, if you will, is at its maximum. Could that, if that had been filed that way, could it have been resolved without reference to the Florida securities laws? Well, certainly Mr. Bovellos would have objected to it and the court would have had to determine the merits. But again, the proof of claims process is a voluntary submission by the creditor to have the bankruptcy court adjudicate its proof of claim. That's different than, say, an adversary proceeding like you had in Stern, where actually it was the debtor asserting a state law claim against a creditor. So I guess what I'm saying here is this is, this is not like Mr. Dukas filing a separate action under Florida law against Mr. Bovellos. This is Mr. Dukas voluntarily electing to assert a proof of claim based on his securities law claim and asking, expressly asking the bankruptcy court to adjudicate it as part of this overall claims disallowance process, which is again at the heart of this, of the bankruptcy court's jurisdiction. So it's two opposite ends of the spectrum and I submit that this one falls on the claims disallowance process, not the separate state law action, if you will. He could have chosen to do that, but he didn't. Could the claims disallowance process, that is to say, this adversary action raising the claim that neither Quick Capital nor Mr. Dukas had any claim against the estate, could that have been resolved without reference to the Florida law? Could it have been? Certainly, I mean, the court had multiple grounds for finding that the Quick Capital claim had no validity. Certainly, had Mr. Dukas not interjected the issue and asked the court to adjudicate its claim, the court could have found that, you know what, it wasn't a loan and he bought the securities. Certainly, as to the disallowance of the Quick Capital claim, the court didn't have to find that Mr. Dukas did not have a securities law claim. The court found that because Mr. Dukas asked it to. If the court had simply found, no, the stock was purchased not for the benefit of the debtor, but for the benefit of Mr. Dukas, and that had been the end of the court's finding, then what with regard to the claim of securities law violation? That would be up to Mr. Dukas. I mean, if he thought he had a claim, he could ask for leave from the automatic stay, he could try something else, but he made his choice and he elected to submit his claim as part of the claims disallowance process in bankruptcy court. And when you elect to invoke that process, then the bankruptcy court has the subject matter jurisdiction and the constitutional authority to issue a final ruling on that claim. And that's what I submit happened here. And again, I think Your Honor's point is a good one, that the court could have... If this was truly just about the Quick Capital claim, the court could have stopped at, you know what, I don't accept your theory, the claim is disallowed. But again, during the hearing, Mr. Dukas elected to change course. And he decided in submitting his proposed findings and conclusions, if you look at the first page of the proposed findings and conclusions that were submitted, they're submitted not just on behalf of Quick Capital, but on behalf of all of the Dukas defendants, including Ted Dukas. He elected, and I would direct the court's attention specifically to paragraph 124. This is a proposed finding of the court that says, Dukas purchased stock in Sterling Banks and the funds were not in advance pursuant to the terms of the loan agreement. George Bevelis is personally liable and Ted Dukas has a claim against Bevelis in the amount of $1,469,791 plus interest costs and reasonable legal fees. You're right. If that's not in there, the court didn't need to address it in terms of the Quick Capital claim. But the bottom line is, that is there. Dukas voluntarily elected to have the But that's exactly what it's doing. It's asking the bankruptcy court to find that it has a claim against Mr. Bevelis' estate and that's exactly what the bankruptcy court did in disallowing it. There wasn't much from Mr. Brown in terms of the merits of the bankruptcy court's disallowance, but I would submit that there was ample evidence in the record to support the exemption The only issues challenged were a couple of the provisions in the statute and it's clear from the private placement memorandum that there was a citation to the rescission period. It's also clear from the record that Mr. Bevelis provided Mr. Dukas all kinds of information, warnings, regulatory materials, so there's no evidence to support any type of material omission or misrep. So in conclusion, I would just submit that let's place substance over form and the substance of what happened here is that Mr. Bevelis filed a proof of claim. The court considered the evidence and disallowed it and that is the height of a bankruptcy court's constitutional authority and core subject matter jurisdiction and that decision should be affirmed. Thank you, Your Honor. Thank you, Counsel. Please, the court, just briefly, Your Honors. With respect to paragraph 124 of the proposed findings of fact that counsel has recited to you, those were proposed findings of fact. Those were not in fact worked into the final order in this case, so it's not a finding of fact of the bankruptcy court. It's a proposed finding of fact that was submitted by trial counsel which was not adopted by the court. Really what Bevelis is saying in this case is that we have waived our personal rights to have an article 3 court determine the issue under Florida security law. It's not an invited error, it's a waiver. That's what they're asserting, that we waived our rights to do so and we haven't done that. Even if the court had done everything correctly, we've not waived our proceeding before the bankruptcy court and the bankruptcy court had went too far and had no right to determine it on the merits. It's not a simple case of a de facto claim. If it's form over substance, as counsel would like you to believe, then why do we have the bankruptcy rules? If everything that's submitted to the bankruptcy court can conceivably be determined by a bankruptcy judge that it is a proof of claim, then there would be no reason to have a specific procedure. Having brought it up, because you do concede that you brought it up. Yes, your honor. Trial counsel did bring it up. Having brought it up, if the bankruptcy court had viewed it in your favor and the other side had appealed and raised the argument you're now raising, would you have agreed that the bankruptcy court didn't have any jurisdiction to rule in your favor? Much like Mr. Martin here before, I can't pick my facts. If that had been the case, I'm sure they would be in the opposite position. The law is what the law is in this circuit and the jurisdictional limits are set forth by Waldman v. Stone. Yes, would I be here, your honor, candidly making a different argument? Absolutely, but that's not the issue before this court today. The issue is, did the bankruptcy court go too far? Did we invite this error? We did not invite any type of error. That is a legal fiction and de facto claim, also a legal fiction. That's why we're asking this court to reverse the decision of the bankruptcy court, send it back, let's sort it out. If we have to try these security claims in the bankruptcy court, we'll do so. We may not have to do that. We may be able to obtain relief from stay, go to Florida and do it. It doesn't matter. What we want to do is go back and let's get it right this time. The bankruptcy court did make an explicit factual finding that found credibility more in favor of Bevelis than your client Dukas, didn't it? With respect to the quick capital claim, yes, your honor, that is true. And I will concede that, that they did in fact. And credibility is for the judge to determine, but credibility has no effect on the jurisdictional argument that we're talking about today. And I concede it. That's my call on next case.